UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | * | CIVIL ACTION |
| OF SCF MARINE, INC. FOR | * | NO. 21-1342 |
| EXONERATION FROM, OR | * | c/w 21-1768, 21-2273, 21-2286 |
| LIMITATION, OF LIABILITY | * | |
| | * | SECTION: "J" (1) |
| | * | |
| | * | JUDGE CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is claimant Watco Transloading, LLC's Motion to Compel Supplemental Rule 30(b)(6) Deposition of Petitioner SCF Marine, Inc. (Rec. Doc. 204). The Court held oral argument on May 29, 2024, and took the motion under submission. For the following reasons, the Motion to Compel is DENIED.

Background

This consolidated action arises out of a barge that broke free from its moorings and sank on the Tennessee Tombigbee Waterway near the Tom Bevill Lock and Dam. SCF Marine Inc. is the operator and owner pro hac vice of the barge Bunge 906B. The barge had been loaded with iron ore fines for SCF Marine's customer Celtic Marine Corporation. On or about June 11, 2021, Watco Transloading, LLC ("Watco") moved the Bunge 906B to Lux Fleet, tying it to Parker Towing Company, Inc.'s barge PTC318B, which was itself tied to the Lux fleet. On or about that same day, the PTC318B broke free of its moorings and carried Bunge 906B away with it. Bunge 906B floated downstream, discharged its cargo, and sank. It was rendered a total loss. Salvors cut the Bunge 906B into two pieces to remove it, with the second piece removed from the waterway on June 28, 2021.

1

SCF Marine filed the lead action seeking exoneration from liability on July 14, 2021, alleging that the value of the Bunge 906B, including its rigging, equipment, freight and appurtenances on June 28, 2021, did not exceed the value of zero dollars. Separately, SCF Marine filed suit against Watco and Parker Towing seeking damages arising out of the sinking of the Bunge 906B. Watco and Parker Towing filed claims against SCF Marine.[1] Additionally, numerous individuals have filed claims in SCF Marine's limitation action alleging damage to real property by flooding from the Tennessee-Tombigbee Waterway. Later in December 2021, Parker Towing and Watco filed limitation actions. The individual property damage claimants have also filed claims against Parker Towin and Watco. These matters have all been consolidated. Trial has been bifurcated, with the limitation and liability trial set to begin on November 4, 2024, and the trial on damages set to begin on February 10, 2025.

The present discovery dispute concerns the corporate deposition of SCF Marine, which was held on February 6, 2024. According to Watco, the representative designated by SCF Marine was unable to answer numerous questions. It submits an illustrative list of 23 inquiries. It insists that SCF Marine must be compelled to present a representative to testify to topics 5, 7, 8, and 13 in its Supplemental and Amended Notice of Deposition. This Notice has been revised from the version used for the February 6, 2024, deposition—according to Watco the revisions amount to clarifications. According to SCF Marine, however, the revisions expand the original topics. In addition to testimony, it seeks any additional documents responsive to items 1, 2, 3, 5, 6, 7, 8, 11, and 12 listed in Exhibit B to the Notice.

SCF Marine argues that it sufficiently responded to the 23 unanswered questions by providing documents and written explanations. It submits that Watco is attempting to get a second

---

[1] Parker Towing represented at oral argument that it intends to dismiss this claim.

2

bite at the apple and explore topics and issues that it could have and should have explored at the original deposition. SCF Marine believes that Watco has come up with a new theory or theories of its case since the original deposition: that SCF Marine was obligated to Celtic Marine to retrieve the Bunge 906B and that its failure to timely do so results in liability to SCF Marine for the damages arising from the breakaway.[2] As to Watco's request for documents, SCF Marine argues that the demand is premature because Watco did not previously notify SCF Marine of this dispute and has not held a conference about them. Moreover, it points out that some document requests overlap with recently served discovery requests that SCF Marine has until June 5, 2024, to respond to.

In reply, Watco submit that SCF Marine's testimony was deficient not only as to the 23 illustrative questions but also as to topics 5, 7, 8, and 13 generally. It points to its counsel's statement on the record listing the deponent's testimony on topics 5, 7, 8, and 13 (and other topics) as insufficient. Watco further argues that there is evidence showing that SCF had a legal duty and was contractually obligated to move the barge on June 9, 2021. It cites SCF's contract of affreightment with Celtic and an email from Celtic showing a June 9, 2021, release date for the Bunge 906B. It submits that when SCF failed to move the barge as it was obligated to do, the loader took matters into its own hands and contracted Watco to move the Bunge 906B to the public fleet at Lux Creek. Watco adds that despite SCF's complaints of Watco's "belatedly" raised liability theory, SCF Marine recently filed an amended complaint containing a new theory of bailment against Watco.

---

[2] Watco also mentions its theory that Lux Fleet is a public fleet and that, as a result, SCF Marine as owner and operator of the barge had a legal duty for it. But the transcript of the SCF Marine deposition shows that Watco was already pursuing this theory at the time of the deposition.

At oral argument, SCF Marine pointed out that it had produced the contract between SCF Marine and Celtic in November 2022. It argues that Watco had the information it needed to explore its theory at the February 2024 deposition, but it did not do so. As to the bailment theory SCF Marine has raised against Watco, it argues that it believes this theory was always part of its general maritime negligence claim but that it amended its claim to make its claims clear.

Watco responded that its counsel did not explore the relationship between Celtic and SCF Marine because the designated representative had no information at all about the subject—even though this was a listed topic. Watco also argued that other discovery methods such as interrogatories and requests for admission are not a sufficient substitute for a corporate deposition because during a deposition, follow up questions can be asked and a corporate deponent's testimony binds the company.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. During discovery, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), aff'd, No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)). But the discovery must also be proportional to the needs of the case. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

2. *Corporate Depositions*

Rule 30(b)(6) provides the procedure for the deposition of an entity. The Fifth Circuit has explained that:

> Rule 30(b)(6) is designed to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself. Therefore, the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters. [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 432–33 (5th Cir. 2006) (footnotes and quotations omitted; alterations in original). "If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute." Id. at 433. But the deposing party also has a duty to ensure that its deposition notice puts the corporation on notice of the areas of inquiry to be pursued so that the corporation can ensure its representatives are properly prepared. See Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 74 (D. Conn. 2010). For example, in Dongguk, the court found that the language "including but not limited to" in the deposition notice was overbroad. Id. Similarly, the court in Trustees of Boston University v. Everlight Electronics Co. struck certain deposition topics as overboard, in part because the requests sought all facts "related to" a particular topic. No. 12-CV-11935-PBS, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014).

5

Pursuant to Rule 30(a)(2)(A)(ii), a party must obtain leave of court to take a deposition when the deponent has already been deposed in the case. The court must grant leave to the extent consistent with Rule 26(b)(1) and (2). Fed. R. Civ. P. 30(a)(2). As recited above, Rule 26(b)(1) provides the scope of discovery. Rule 26(b)(2) requires that the court, on motion or on its own, limit discovery "(1) that is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, less burdensome, or less expensive; (2) when the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) when the discovery is outside the scope of Rule 26(b)(1)."

*3. Analysis*

The Court has reviewed the deposition transcript and finds that the deponent was largely prepared for the deposition. This is not a situation where the deponent repeatedly and evasively answered "I don't know" on topics clearly within the deposition notice topics. The Court finds that the deposition testimony does not justify wholesale reopening of the deposition as to topics 5, 7, 8, and 13 as Watco requests. Moreover, the Court has the same concerns as SCF Marine with regard to scope—the addition of the business relationship with Logistical Services, Inc. in June 2021 and the addition of the subtopics to Topic 8 appear to be more of an expansion of topics than a narrowing. Watco has not explained why such an expansion would be appropriate here (e.g., because of recently produced documents). Watco had ample opportunity to explore the original topics at the deposition and, to the extent there were additional questions that Watco sought to ask on these topics, the transcript gives no suggestion that this was the case.

Watco argues that the deponent was wholly unprepared to answer questions about the relationship between SCF Marine and Celtic. To the contrary, the Court finds that although the

6

deponent was not able to answer a few questions about the relationship with Celtic,[3] he was able to answer numerous questions about the relationship. See Rec. Doc. 219, at 15, 24-25, 34, 57-58, 93. At oral argument, Watco argued that had the deponent been prepared, it would have asked the deponent about the contract between SCF Marine and Celtic and SCF Marine's obligation thereunder to move the barge upon release. But there is simply no suggestion in the transcript that Watco's counsel had intended to ask such questions but was frustrated by the deponent's lack of preparation. For example, Watco's counsel did not present the contract to the deponent and ask if he was familiar with it. Watco's counsel did not ask any questions suggesting it was exploring its theory that SCF Marine's obligation to move the barge and its purported delay in doing so results in its liability. Watco has not disputed that it had the contract in hand well in advance of the deposition. Its failure to explore that theory at the deposition does not impose a burden on SCF Marine to once again prepare a corporate representative for deposition. Moreover, other avenues of discovery remain available to Watco, including fact witness testimony.

As to the 23 questions that were unanswered by the corporate deponent, the Court finds that SCF Marine's follow up production of documents and written explanation/responses is sufficient to remedy any deficiencies and that any further information needed can be more efficiently obtained from other sources—including written discovery and fact witness testimony. As SCF Marine points out, questions 2, 3, 4, 8, 13, 16, and 20 are answered via document production—the documents speak for themselves. SCF Marine has offered to stipulate to the authenticity of these documents. And if further explanation or interpretation of these documents is required, written discovery remains available to Watco. SCF Marine has explained that no

---

[3] As discussed below, these questions were outside of the scope of the deposition notice.

documents were submitted to the Coast Guard, mooting the request for further response to questions 21 and 22.

Further, the Court finds that questions 5, 6, and 7 concerning prior loading of the Bunge 906B are outside the scope of the original deposition notice (and, in any event, appear to be irrelevant). Questions 9, 10, and 17 are also outside the scope of the topics in the deposition notice, which did not seek testimony on SCF's usual operations at the docks/fleets at issue or other transactions besides the loading of the Bunge 906B with iron ore fines and the shifting of the barge. Question 15 is also outside of the deposition notice.

Question 12 asked the deponent who authorized Logistical Services, Inc. to request shifting of the barges. As SCF Marine points out, this is information within the knowledge of LSI and not SCF Marine. As to question 11 (and also 10) seeking interpretation of the Watco invoices, the Court finds that the documents largely speak for themselves, that Watco itself is in the best position to interpret its own invoices, and that, in any event, fact witness testimony by an individual in the dispatch department is an available source for further information.

With regard to questions 18 and 19 concerning surveys and inspection of the Bunge 906B, the court finds that SCF Marine's supplemental responses and document production sufficiently answer the questions. Specifically, SCF Marine produced copies of all surveys of the barge from 2018 through 2021. To the extent additional information is needed on this topic, production of documents reflecting inspections would be a more efficient source. Fact witness testimony regarding such inspections is also an available source of information.

With regard to question 14 asking how the barge was insured for a particular amount, the Court finds that SCF Marine's supplemental response regarding value surveys and its production of same is sufficient. If necessary, written discovery could be issued to obtain further information.

SCF Marine's supplemental responses and document production sufficiently remedied any deficiencies in the testimony of its corporate witness. A reopening of the deposition or a second corporate deposition is not justified.

## Conclusion

For the foregoing reasons, the Court finds that SCF Marine's corporate deponent was largely prepared for the deposition and that any deficiencies in his testimony have been or can be remedied by subsequent discovery. Accordingly, the Motion to Compel is DENIED.

New Orleans, Louisiana, this 31st day of May, 2024.

_____
Janis van Meerveld
United States Magistrate Judge